1  FULTZ MADDOX DICKENS, PLC
   ADRIANNE J. SIMON (Cal. Bar No. 150227)
2  asimon@fmdlegal.com
   101 South Fifth Street, 27th Floor
3  Louisville, KY 40202-3116

4  Attorneys for Plaintiff KND
   DEVELOPMENT 55, LLC
5  d/b/a KINDRED HOSPITAL RANCHO

6

7                    UNITED STATES DISTRICT COURT

8                    CENTRAL DISTRICT OF CALIFORNIA

9                            EASTERN DIVISION

10

11  KND DEVELOPMENT 55, LLC d/b/a          CASE NO.
12  KINDRED HOSPITAL RANCHO, a
    Wyoming limited liability company      **COMPLAINT FOR BENEFITS
13                                          UNDER ERISA (29 U.S.C. § 1132)**
               Plaintiff,
14
       v.
15
    THE HAYWARD INDUSTRIES, INC.
16  MEDICAL PLAN; HAYWARD
    INDUSTRIES, INC., a New Jersey
17  corporation,

18             Defendants.

19

20        Plaintiff KND Development 55, LLC d/b/a Kindred Hospital Rancho

21  ("Kindred Hospital"), for its complaint, complains and alleges as follows:

22

23                     **JURISDICTION AND VENUE**

24        1.      Jurisdiction of this Court arises under the laws of the United States, 29

25  U.S.C. § 1331 (federal question), as a civil action encompassing violations of the

26  Employees Retirement Income Security Act of 1974, as amended ("ERISA"), 29

27  U.S.C. § 1132.

28

2.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and 29 U.S.C. § 1132(e)(2), in that a substantial portion of the events or omissions giving rise to Kindred Hospital's claims occurred in this district.

## THE PARTIES

3.     Kindred Hospital is a limited liability company organized and existing under the laws of the State of Wyoming with its principal place of business in Louisville, Kentucky.  Kindred Hospital is located in San Bernardino County, California.

4.     Upon information and belief, defendant The Hayward Industries, Inc. Medical Plan ("Plan") is an employee group health benefit plan organized and existing under the provisions of the Employees Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

5.     Upon information and belief, defendant Hayward Industries, Inc. is the Plan Sponsor and Plan Administrator and, as such, is a fiduciary of the Plan within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21).  Hayward Industries, Inc. is a New Jersey corporation with its principal place of business in Berkeley Heights, New Jersey.

6.     The Plan and Hayward Industries, Inc. shall be referred to collectively as the "Plan Defendants."

## FACTUAL BACKGROUND

7.     Between October 26, 2016 through May 3, 2017, the patient at issue here (whose name will not be used to protect the patient's privacy and who will hereinafter be referred to as the "Patient"), was a patient at Kindred Hospital.  For the entirety of that time, the Patient had medical coverage through and was thus a beneficiary of the Plan.

8.     Prior to admitting the Patient, Kindred Hospital contacted Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), which on information and belief was the Plan Defendants' claim administrator and agent at the time of the events at issue

and at all times pertinent hereto was acting on behalf of the Plan Defendants, to verify the Patient's coverage under the Plan.

9.     A Horizon representative advised Kindred Hospital that the Patient was eligible for coverage under the Plan.  The Plan Defendants, through Horizon, also authorized the Patient's admission to Kindred Hospital as medically necessary.   In reliance on the Plan Defendants' representations, through its agent Horizon, Kindred Hospital admitted the Patient into its facility and provided him with care and treatment.

10.     Kindred Hospital submitted claims to the Plan Defendants, through Horizon and the local Blue Cross plan pursuant to the Blue Card program, for the care and treatment of the Patient in the ordinary course of business.

11.     Horizon denied payment for the care and treatment provided to the Patient between February 18 through May 3, 2017, on the alleged grounds that the care was not medically necessary.

12.     Kindred Hospital submitted two detailed clinical appeals, but Horizon refused to retreat from its position.

13.     Far from having a California-based pulmonologist or similar specialist review Kindred Hospital's appeals as required under ERISA regulations, Horizon had two pediatricians who were Horizon medical directors located in Philadelphia and Newark review those appeals.  Moreover, unbeknownst to Kindred Hospital at the time the appeals were submitted, Horizon purported to send one of the appeals to physical medicine and rehab doctor licensed in New York who worked for an outside vendor, which on information and belief derives substantial compensation from performing medical reviews for Horizon and other payors and thus rubber stamps Horizon's decisions as in fact occurred here.

14.     None of these physicians were acquainted with the safe discharge options in California for patients like the Insured.  And none of them had experience

dealing with patients as sick as the Insured with as many comorbidities as he had.  It is therefore not surprising that Horizon's denials were entirely wrong.

15.     The Patient was a fragile and medically complex 64 year old man, whose multiple medical issues required daily physician oversight and intervention, as well as round-the-clock care that could not be provided at a lower-level care facility.  He required ongoing treatment of pleural effusion, liver disease, kidney disease on dialysis, pneumonia, cholecystostomy drain, and thoracotomy wound.  He was also ventilator dependent with a tracheostomy.  During the denied period, the Patient received long-term acute hospital care, including, among other things, IV antibiotics for ongoing drug-resistant infections, hemodialysis, vacuum assisted wound therapy, g-tube feeding, vent weaning, vasopressors for low blood pressure, multiple blood transfusions, and ultimately transfer to Kindred Hospital's intensive care unit ("ICU").

16.     Sadly, the Patient was too ill to recover and he passed away in Kindred Hospital's ICU on May 3, 2017.  The intensity of services Kindred Hospital provided would not have been available at lower levels of care.  Indeed, the fact that the Patient's condition worsened while receiving acute hospital care means he was in no way stable for discharge at the time Horizon purported to determine that the treatment the Patient was receiving at Kindred Hospital was no longer medically necessary.

17.     Based on the contract rate, $203,163.00 remains due and owing to Kindred Hospital in connection with this uncompensated care and treatment.  Given the lengthy delay in payment and erroneous denials, Kindred Hospital is excused from offering the contract discount and is entitled to its full billed charges, an amount in excess of $1,900,000.

## CLAIM FOR BENEFITS UNDER ERISA, 29 U.S.C. § 1132

18.     Kindred Hospital repeats and realleges the allegations contained in paragraphs 1 through 17, inclusive, and incorporates the same as though set forth in full.

PRINTED ON
RECYCLED PAPER

19.     Pursuant to an assignment of benefits executed on behalf of the Patient who was a beneficiary under the Plan pursuant to 29 U.S.C. § 1132(a)(1), Kindred Hospital may also be considered a beneficiary under the Plan for purposes of this claim for ERISA benefits against the Plan.

20.     Accordingly, Kindred Hospital is empowered to bring a civil action against the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B), to recover benefits due to it under the terms of the Plan and to otherwise enforce its rights under the Plan.

21.     The Plan delegated exclusive discretionary authority to the Plan Administrator, Hayward Industries, Inc., which did not actually make the decisions at issue.  Instead, Horizon and an outside vendor appear to have made all such decisions.  Because exclusive discretionary authority was not delegated to those entities in the Plan, and because the Plan Administrator to which discretionary authority was delegated did not actually exercise that discretion, Horizon's decisions must be reviewed under a *de novo* standard.

22.     Moreover, even if an abuse of discretion standard is deemed to apply, the Plan Defendants have an inherent conflict of interest, insofar as they serve both as the payor and the administrator under the Plan.  Any decision by the Plan Defendants thus merits less deference than the decision of a non-conflicted administrator.  Therefore, at a minimum, the Plan Defendants' decision to deny payment to Kindred Hospital for services provided to the Patient after February 17, 2017, must be supported by concrete evidence in the administrative record.

23.     No such evidence exists.  Under the Plan, benefits are paid for medically necessary and appropriate care and treatment, which is defined as health care services provided "for the purpose of evaluating, diagnosing or treating an illness, injury, disease or its symptoms" and that are in accordance with generally accepted standards of medical practice, clinically appropriate, effective, not primarily for the patient's or provider's convenience, and not more costly than an equivalent alternative.

PRINTED ON
RECYCLED PAPER

24.     The care provided to the Patient by Kindred Hospital clearly met this definition.  The Patient was unstable and had medically complex conditions that required treatment that would not and could not have been provided in a lower level of care.  Instead, the Patient required frequent and multi-faceted services and treatments that could only be provided in an acute care facility like Kindred Hospital.

25.     In addition to refusing to pay for medically necessary care in contravention of the terms of the Plan, the Plan Defendants failed to discharge other duties under ERISA.  Among other things, on information and belief, they failed to have unbiased physicians review the pertinent medical records before making the initial erroneous determinations, failed to have a California-based pulmonologist or other appropriate specialist review the records and appeals, failed to consider the discharge options available in California, failed to provide Kindred Hospital with detailed information concerning the provisions of the Plan upon which the denials were based, otherwise failed to provide a full and fair review, failed to have a reasoned basis for their decision to deny coverage, unreasonably construed the plain language of the Plan, and otherwise failed to fairly adjudicate benefits in violation of the terms of the Plan and requirements under ERISA.

26.     In short, the Plan Defendants wrongly denied benefits under the Plan and committed numerous other procedural violations.  As such, Kindred Hospital is entitled to its full billed charges (since it is excused from offering the contract discount given the lengthy delay in payment and erroneous denials), along with interest on the unpaid benefits and reasonable attorneys' fees and costs for the amounts it has been forced to expend to address the Plan Defendants' wrongful denial of benefits and other wrongful conduct.

WHEREFORE, Kindred Hospital prays for judgment against the Plan Defendants, and each of them, as follows:

1.     For benefits under the Plan in an amount exceeding $1,900,000, as well as reasonable attorneys' fees incurred in connection with this action;

PRINTED ON
RECYCLED PAPER

1        2.      For pre-judgment and post-judgment interest on the above amounts at

2   the maximum legal rate;

3        3.      For costs of suit and reasonable attorneys' fees pursuant to ERISA and

4   otherwise to the extent permitted by law; and

5        4.      For such other and further relief as the Court may deem just and proper.

6

7   DATED:  October 22, 2020          Respectfully submitted,

8                                   FULTZ MADDOX DICKENS PLC

9

10

11

12                        By:

ADRIANNE J. SIMON

13                             Attorney for Plaintiff KINDRED

HOSPITAL RANCHO

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRINTED ON

RECYCLED PAPER